**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | | |
|---|---|---|---|
| **BRIAN BAUDE,** | ) | | |
| | ) | | |
| **Plaintiff,** | ) | **Case No. 4:18-CV-1564** | |
| | ) | | |
| **v.** | ) | **JURY TRIAL DEMANDED** | |
| | ) | | |
| **CITY OF ST. LOUIS, et al.,** | ) | | |
| | ) | | |
| **Defendants.** | ) | | |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANTS MOTION TO DISMISS OR STRIKE**

Plaintiff has filed this second amended complaint [doc. 34] prior to a ruling on the prior motion to dismiss of defendants. Regrettably, plaintiff has elected to adhere to his mode of pleading agitprop instead of a short, plain statement of facts showing a plausible claim for relief in compliance with F.R.Civ.P. 8(a). Defendants are therefore constrained to present anew a motion to dismiss or strike all or part of the second amended complaint. The second amended complaint corrects some deficiencies of the original complaint, but is nonetheless an only slightly less egregious breach of F.R.Civ.P. 8(a). At a minimum, many allegations should be stricken. Accepting the second amended complaint as it stands, however, its prolix allegations and its exhibits defeat plaintiff's own cause, failing to state a claim as to defendants.

CLAIMS ALLEGED

Given the manner in which the second amended complaint is framed, defendants still find it difficult to summarize plaintiff's claims. As best defendants can discern, plaintiff seeks damages on account of various constitutional and state law torts allegedly inflicted by defendants.

Plaintiff's second amended complaint spends nearly twenty pages asserting allegations related to various events the weekend of September 15, 2107. But, Plaintiff's 13 counts arise only out of an incident involving his arrest during at a protest demonstration at Washington and Tucker in the City of St. Louis on September 17, 2017.

1.      **The second amended complaint [doc. 34] should be dismissed or stricken for failure to comply with F.R.Civ.P. 8, in that it is replete with tendentious, inflammatory, and immaterial allegations attacking the integrity of Missouri courts, injecting issues to which defendants cannot possibly frame a response, and including voluminous exhibits and references to other litigation without specifying wherein and how the exhibits reflect facts germane to plaintiff's claims.**

A Complaint must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Rule 8(a) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, and a demand for the relief sought. Rule 10(b) requires that a party must state his claims in separately numbered paragraphs, each limited as far as practicable to a single set of circumstances. In other words, the complaint should not be overly wordy or repetitive. It should instead be limited to the 'who, what, when, and where' of the facts of plaintiff's claim or claims. [Perry, J., *Smith v. Republic Services,* 2017 U.S.Dist.LEXIS 147883 (E.D.Mo. 2017), aff'd, 739 Fed.Appx. 362 (8th Cir. 2018).]

Plaintiff's second amended complaint is neither short nor plain. It commences with the same inflammatory rhetoric that was as ill-suited for the original complaint as it is for the amended. That rhetoric continues for many paragraphs. In particular, the paragraphs casting aspersions on the verdict in *State v. Stockley,* are impertinent and perhaps scandalous, and as implying some impropriety on the part of the judge rendering the verdict do belong in a federal complaint.

Although defendants submit that the second amended complaint as it stands fails to state a claim for relief when one finally reaches the alleged claims, the inclusion of the immaterial and impertinent allegations impose an unnecessary burden on defendants in seeking to understand the claims actually asserted, as distinct from plaintiff's dissatisfaction with the result of *State v. Stockley.* This unnecessary burden is prejudicial, because it forces the defendants to try to guess at how much of the scattershot allegations actually pertain to plaintiff's claims against defendants, as opposed to individuals or to plaintiff's objections to policing in general. The burden on defendants is exacerbated by inclusion of voluminous exhibits, such as the transcript of a preliminary injunction hearing in a parallel case. Cf. F.R.Civ.P. 10(c)("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.")

Defendants find paragraphs ¶¶19-24; 26-27; 36-39; 52 and 117-127 to be particularly troublesome. Indeed, paragraphs 36-39 fly in the face of F.R.Ev. 408(a), attempting to use a settlement consent decree (which was directed at the State of Missouri and St. Louis County, as well as the City) to give color to plaintiffs' claims and seemingly alleging that defendants supposed violation of the consent decree is an independent ground for relief. All of these paragraphs are incorporated in each count of the complaint by reference, but none of them appear to be "well-pleaded, material facts."  Similarly, defendants are uncertain as to how much of the hearing transcript appended as an exhibit relates to the claims that plaintiffs attempt to plead. Is all of the hearing testimony in that transcript to be construed as allegations of fact giving rise to plaintiff's complaint, or only portions reflecting testimony favorable to plaintiff?  For purposes of its motion under F.R.Civ.P. 12(b)(6), the defendants will certainly argue that plaintiff's use of a hearing transcript injects matter unfavorable to her, but the use of such an exhibit hardly seems to comport with Rule 8(a).

Defendants are aware that sufficient facts must be alleged to show a "plausible" claim. Nevertheless, nothing in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), or kindred cases requires the type of pleading indulged in by plaintiff. On the contrary, given the demands for pleading a claim of municipal liability under 42 U.S.C. §1983 as discussed below, the enforcement of Rule 8(a) is peculiarly appropriate in this case.[1]  See, e.g., *Michaelis v. Nebraska State Bar Ass'n,* 717 F.2d 437 (8th Cir. 1983); see also *McHenry v. Renne,* 84 F.3d 1172, 1179-80 (9th Cir. 1996): "Prolix, confusing complaints such as the ones plaintiffs filed in this case impose unfair burdens on litigants and judges. As a practical matter, the judge and opposing counsel, in order to perform their responsibilities, cannot use a complaint such as the one plaintiffs filed, and must prepare outlines to determine who is being sued for what." Plaintiff's complaint as framed should be dismissed--concededly without prejudice--with leave to re-plead in conformity to Rule 8(a).

---

[1] Several counts appear to be aimed only at the individual defendants, but the incorporation by reference of all earlier counts leaves defendant City uncertain as to whether it is the target of a given count or not.

3

If not dismissed for violating Rule 8(a) or for failure to state a claim, at a minimum the impertinent and immaterial allegations and exhibits should be struck under F.R.Civ.P. 12(f).  The allegations of the second amended complaint [doc. 34] referring to the merits of other litigation and impugning the verdict in the prosecution of Officer Stockley, incorporating wholesale various exhibits in regard to the verdict and other litigation should be stricken.

Defendants recognize that the motion to strike under F.R.Civ.P. 12(f) is not favored. Nevertheless, this Court enjoys "liberal discretion" in the matter, see *BJC Health Sys. v. Columbia Cas. Co.,* 478 F.3d 908 (8th Cir. 2007). If the deviation from Rule 8(a) is to be countenanced by the Court, the immaterial and impertinent allegations should be stricken, and no answer required thereto. Defendants do not seek to strike the entire complaint based on Rule 12(f), but rather only the paragraphs that inject immaterial or impertinent allegations, to which the defendants are at a loss to frame an answer.

Defendants submit that ¶¶19-24, 36-40, and exhibits A, B, C, D, and E are immaterial and impertinent. They do more than merely provide context for plaintiff's claim. They inject the merits of the verdict acquitting Officer Stockley, they import orders and decrees from other litigation, at least partly in contravention of the rules of evidence, as well as extensive portions of the preliminary injunction record in another pending case. They make it difficult or impossible for defendants to know what, if any, allegations besides those surrounding his arrest on September 17, 2017 actually form the basis of the claims against it, as opposed to society at large. Finally, they include assertions best described as political. Rule 12(f) can be deployed to clean up the pleadings, see *Blake v. Batmasian,* 318 F.R.D. 698 (S.D.Fla. 2017), and defendants submit that such an application is still appropriate here.[2]

**2.      The second amended complaint [doc. 34] fails to state a cognizable claim for damages under 42 U.S.C. §1983 against defendant City of St. Louis, in that it wholly fails sufficiently to allege an actionable policy or custom of defendant City causing a constitutional tort.**

"The Supreme Court has set a high bar for establishing municipal liability under § 1983, and demands careful analysis from district courts, to avoid any risk that liability could be imposed under a

---

[2]   Defendant reiterates that plaintiff's injection of the *Ahmad* case record is ironic, in that the complaint in that case, while without merit, exemplifies how claims arising out of the 2017 protests can be artfully and succinctly pleaded.

theory of respondeat superior." *Soltesz v. Rushmore Plaza Civic Ctr.*, 847 F.3d 941, 947 (8th Cir. 2017) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)).  Equally important is the requirement under the federal rules that a complaint has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

The first inquiry "in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). A plaintiff seeking to impose liability on a municipality is required to identify either an official policy or a widespread custom or practice that was the moving force behind the plaintiff's constitutional injury. *See Bd. of the Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997); *Crawford v. Van Buren County, Ark.*, 678 F.3d 666, 669 (8th Cir. 2012). For a municipality to be held liable on the basis of custom, "there must have been a pattern of 'persistent and widespread' unconstitutional practices which became so 'permanent and well settled' as to have the effect and force of law." *Jane Doe "A" v. Special School Dist.*, 901 F.2d 642, 646 (8th Cir. 1990); *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978); cf. *Adickes v. S.H. Kress & Co.,* . The theory of inadequate training is merely an extension of the theory of municipal liability for policy or custom:  there must be proof of deliberate choice of the guiding principle by a final policymaker or of acquiescence in known unconstitutional conduct by the entity. E.g., *Marsh v. Phelps County,* 902 F.3d 745 (8th Cir. 2018).

**a.**    **Plaintiff fails to allege facts sufficient to state a claim that City had an unconstitutional official policy regarding plaintiff's Fourth Amendment rights.**

Plaintiff still fails to plead facts identifying an official policy that directly caused the violation of plaintiff's Fourth Amendment rights. *Harris*, 489 U.S. at 385. An official policy involves "a deliberate choice to follow a course of action made from among various alternatives by an official who is determined by state law to have the final authority to establish governmental policy." *Ware*, 150 F.3d at

880. A policy may take the form of a policy statement, local ordinance, regulation, or decision officially adopted and promulgated by a local government's officers. *Monell*, 436 U.S. at 690.

Here, plaintiff has failed to plead facts tending to show that a City policymaker with final authority officially adopted and promulgated a policy statement or decision directing officers to unreasonably search, seize, use excessive force, or otherwise retaliate against protesters. As such, plaintiff's claim that the City had an unconstitutional official policy fails to state a claim to relief that is plausible on its face and should be dismissed. *Twombly*, 550 U.S. at 570.

**b.      The second amended complaint [doc. 34] fails to allege facts tending to show that the City had a widespread custom or practice of violating protesters' Fourth Amendment rights.**

With respect to Plaintiff's Fourth Amendment rights, the second amended complaint alleges generally that defendant City has a "custom or policy" of using excessive force in policing protests, issuing vague dispersal orders without giving an opportunity to comply, arbitrarily declaring unlawful assemblies in the absence of any threat, regularly conducting unreasonable seizures, arresting individuals without probable cause, and routinely using excessive force in general, without specifying that such conduct is exclusively in connection with anti-police protests. [doc. 34], ¶189. The second amended complaint asserts that actions of the defendants, among others, interfered with plaintiff's ability to associate freely in public, and interfered with plaintiff's ability to gather information and "cover" a matter of public interest. *Id.,* ¶¶ 158-176, 183-194, and 248-255. These officers' actions were allegedly pursuant to the City's policy or custom of approving such unconstitutional behavior or of deliberately failing to train officers so as to prevent such conduct.

To establish municipal liability under §1983 on the basis of unofficial custom, a plaintiff must plead and prove (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the municipality's employees, (2) deliberate indifference to or tacit authorization of such conduct by the municipality's policymaking officials after notice to the officials of that misconduct, and (3) injury to the plaintiff caused by acts pursuant to that custom, i.e., the custom was the moving force behind the constitutional violation at issue. *Malone v. Hinman,* 847 F.3d 949 (8th Cir. 2017); see also

6

*Board of County Commissioners v. Brown,* 520 U.S. 397, 405 (1997): "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee."

Plaintiff points to the *Ahmad* case, *Ahmad v. City of St. Louis, Missouri*, No. 4:17-CV-2455 CDP, 2017 WL 5478410 (E.D. Mo. Nov. 15, 2017), in a failed attempt to show that the City Police Department has a widespread custom of violating police protesters' First and Fourth Amendment rights.

*Ahmad*, a temporary injunction case,[3] cannot be used to show City police had a widespread custom or practice of violating protesters' First and Fourth Amendment rights because the events in *Ahmad* occurred at the same time as Plaintiff's allegations, i.e., September 2017. *Ahmad*, 2017 U.S. Dist. LEXIS 188478, at *2; [doc. 34, ¶ 118-19]. Because the events in *Ahmad* occurred at the same time as the events at issue here, the *Ahmad* holding cannot serve as a prior similar complaint of unconstitutional conduct that establishes a pattern of unconstitutional conduct. *See Andrews*, 98 F.3d at 1074-75.

Likewise, plaintiff's improper allegations regarding the *Templeton* case do not serve to create a plausible inference of a pattern or practice. On the contrary, by consenting to a limited decree, the City demonstrated that, if anything, the City does *not* treat police misconduct with deliberate indifference or tacitly acquiesce in such conduct.

Plaintiff's mention of other incidents of protests, [doc. 34, ¶¶34-35, 41-42], two of which took place in 2014, and one of which patently involved a correctional facility, are insufficient to establish a pattern of unconstitutional conduct that is so "persistent and widespread" as to have the effect and force of law. *See Andrews v. Fowler*, 98 F.3d 1069, at 1076 ("two instances of misconduct . . . do not indicate a 'persistent and widespread' pattern of misconduct that amounts to a city custom or policy . . . .").

Nor does the second amended complaint allege facts which plausibly show that Defendant City had a custom of applying force to protesters whose protest activities had terminated some time

---

[3] Facts and conclusions determined by a court in granting or denying a preliminary injunction are provisional and nonbinding. *See Henderson v. Bodine Aluminum, Inc.*, 70 F.3d 958, 962 (8th Cir. 1995).

beforehand, for the purpose of punishment or any other purpose. Plaintiff is simply trying to shoehorn an isolated, random incident into the standards of municipal liability under §1983. In that she has failed.

The allegations regarding failure to train fall with the allegations of a custom. A city may be liable for deficient policies regarding training police officers where (1) the city's training practices are inadequate; (2) the city was deliberately indifferent to the rights of others in adopting them, such that the failure to train reflects a deliberate or conscious choice by a municipality; and (3) an alleged deficiency in the city's training procedures actually caused the plaintiff's injury. *Andrews*, 98 F.3d at 1076 (citations omitted). Other than mere formulaic recitation of the above elements, plaintiff alleges no facts which would plausibly state a claim that defendant City's training practices are inadequate, that the City was deliberately indifferent to the rights of other in adopting said training practices, and the City's training procedures caused plaintiff's injuries. Likewise, plaintiff makes no plausible allegations that the City's discipline or supervision of police officers was inadequate, the City was deliberately indifferent to the rights of others when disciplining or supervising its police, or that the City's failure to discipline and supervise its police caused plaintiff's injury. The alleged incident involving plaintiff and the police at the intersection of Tucker and Washington on September 17, 2017 is facially insufficient to show a municipal decision or policy to engages in excessive force or unreasonable seizures against innocent citizens. Because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice to defeat a motion to dismiss," plaintiff's claim regarding City's failure to train, discipline, or supervise its police officers should be dismissed. *See Iqbal*, 556 U.S. at 678.

**3.    Plaintiff's civil conspiracy claims against unidentified officers do not support a claim against the defendant City, because such a civil conspiracy claim is barred by the intracorporate conspiracy doctrine.**

Plaintiff's manner of pleading her claims leaves defendant City uncertain as to whether the "conspiracy" alleged in count III is implicated in the claim of municipal liability alleged in count IV. In any event, the conspiracy allegations of count III cannot be the basis of a claim against the City. Because a conspiracy by its nature involves multiple parties, the intracorporate conspiracy doctrine provides that "a local government entity cannot conspire with itself through its agents acting within the scope of their

employment." *Kelly v. Cty of Omaha*, 813 F.3d 1070, 1078 (8th Cir. 2016)(citing *L.L. Nelson Enters., Inc. v. Cty. of St. Louis, Mo.*, 673 F.3d 799, 812 (8th Cir. 2012)). Government agents can act within the scope of their employment duties "even though [a] complaint alleges improprieties in the execution of these duties." *L.L. Nelson Enters., Inc.,* 673 F.3d at 812 (8th Cir. 2012)(holding that "[t]he referral of moving companies to property owners seeking the execution of evictions was within the scope of employment for deputies and staff members in the sheriff's office" even where employees used those referrals to execute a kickback scheme and to punish a moving company seeking to end that scheme); *see also Cross v. Gen. Motors Corp.*, 721 F.2d 1152, 1157 n.7 (8th Cir. 1983)(finding alleged acts of company's agents within the scope of their employment where those acts included making "false entries" in plaintiff's employment records, improperly denying the plaintiff overtime pay, and "physically batter[ing]" the plaintiff).

Assuming that plaintiff is attempting to allege a City policy of acquiescing in conspiracies of police officers, such a claim is foreclosed by cases such as *Kelly v. City of Omaha*, 813 F.3d 799 (8th Cir. 2016). In that case, dismissal of a conspiracy claim against the City of Omaha alleging violations of plaintiff's civil rights under the Fourth, Fifth, and Fourteenth Amendments was affirmed, with the Court of Appeals holding that although the plaintiff alleged improprieties in the execution of the city employees' duties, this fact alone was insufficient to evade the intracorporate conspiracy doctrine. *Id.* at 1079. Here, similarly, plaintiff does not allege City's police officers were acting outside the scope of their employment duties; plaintiff merely alleges improprieties in the execution of their duties. As in *Kelly*, plaintiff's allegations of improprieties in this case are insufficient to state a claim for civil conspiracy against City, as said claims are barred by the intracorporate conspiracy doctrine.

**4.     Plaintiff's civil conspiracy claim fails because the underlying claims, upon which the conspiracy claim is premised, fail.**

In the absence of a violation, there is no actionable conspiracy claim. *Cook v. Tadros*, 312 F.3d 386, 388-89 (8th Cir. 2002) (citing to *Hanten v. School Dist. of Riverview Gardens*, 183 F.3d 799, 809 (8th Cir. 1999) (affirming dismissal of violation of employees' right of free association claim under section 1983, holding that a civil conspiracy claim does not set forth an independent cause of action, but is sustainable only after an underlying violation has been established); and *Pfannstiel v. City of*

9

*Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990) (holding that a conspiracy claim is not actionable without an actual violation of section 1983) (vacated in part on other grounds)).

As demonstrated throughout this memorandum in support, plaintiff fails to state a claim under any count of the complaint, against City or otherwise. Because the complaint fails to state a claim for the underlying actions, plaintiff's civil conspiracy claim against City must fail, as it is not an independent cause of action.

**5.      The second amended complaint [doc. 34] fails to state a cognizable claim for damages under U.S.C. §1983 against Defendants Leyshock, Boyher, Sachs, Jemerson, Karnowski, and Rossomanno, in that it fails to show they personally participated in a constitutional tort, and otherwise shows on its face that defendants Leyshock, Boyher, Sachs, Jemerson, Karnowski and Rossomanno did not violate any constitutional right and is immune from liability.**

It is elementary that there is no *respondeat superior* liability under 42 U.S.C. §1983.  Further, it is doubtful that liability under that statute can be joint.  Thus, it is crucial that a complaint against a supervisory police officer on the basis of a subordinate's use of force sufficiently allege personal participation by the supervisor in the tort, at least to the extent of "tacit collaboration." In other words, assuming the liability of defendants Does 1-5, defendants Leyshock, Boyher, Sachs, Jemerson, Karnowski, and Rossomanno must have been aware of the illegal behavior and the duration of the incident must be sufficient to have allowed intervention, giving rise to an inference of tacit approval. *White v. Jackson* 865 F.3d at 1081.  Plaintiff makes no such allegations against defendants Leyshock, Boyher, Sachs, Jemerson, Karnowski, and Rossomanno; therefore claims against these defendants should be dismissed.

**5.      The state law claims as to defendants in the second amended complaint [doc. 34] can be dismissed for lack of jurisdiction, given that the second amended complaint fails to state a cognizable federal claim; in addition, the second amended complaint does not state viable claims for relief on the basis of the Missouri law of torts, in that the complaint fails to overcome sovereign immunity of defendant City and official immunity of the individual defendants and cannot plead a claim for punitive damages against the City.**

The Court should dismiss plaintiff's state law tort claims alleged against the defendants in counts V, VI, VII, VIII, IX, X, XI, and XIII of the second amended complaint, because plaintiff has failed to allege cognizable federal claims against the defendants as discussed above.

10

Assuming the Court reaches the question of the sufficiency of the second amended complaint as to state law claims, all such claims must be dismissed against the City for failure to state a claim, as such claims are barred by sovereign immunity. Against the individual defendants, the claims must be dismissed because they are barred by sovereign immunity.

First, defendant City is absolutely immune to any claim for punitive damages for the alleged torts of assault, battery or infliction of emotional distress. Mo.Rev.Stat. §537.610.3.

Second, with regard to the counts alleging infliction of emotional distress, the is no actionable claim for infliction of emotional distress when the same facts give rise to another cognizable tort, such as assault. See *Brown v. City of Pine Lawn,* 2018 U.S.Dist.LEXIS 26609 (E.D.Mo. 2018)(Webber, District Judge).

Third, counts V and XIII are duplicative. Under Missouri law, every battery includes an assault. If the conduct alleged by plaintiff was otherwise actionable, she would be entitled to recover for battery only, as she alleges actual physical contact. See *Armoneit v. Ezell,* 59 S.W.3d 628 (Mo.App.E.D. 2001). Count V should be dismissed unless plaintiff were to plead count VIII as an alternative claim. However, dismissal with leave to re-plead is not warranted, because both counts are barred by sovereign immunity.

Under Missouri law, sovereign immunity renders public entities "immune from suit for their negligent acts unless the General Assembly has expressly waived such immunity." *Phelps v. City of Kansas City*, 371 S.W.3d 909, 912 (Mo. App. W.D. 2012). The express waivers of sovereign immunity arise where a person sustains injuries (1) directly resulting from the negligent acts or omissions by public employees arising out of the operation of motor vehicles or (2) caused by a dangerous condition of a public entity's property." §537.600 RSMo; see also *Davis v. Lambert-St. Louis Int'l Airport*, 193 S.W.3d 760, 764 (Mo. banc 2006). Municipalities may waive sovereign immunity under §537.610 RSMo by purchasing insurance, but only to the extent of the insurance policy purchased. §537.610 RSMo

Sovereign immunity is not an affirmative defense but is part of a plaintiff's prima facie case. *St. John's Clinic, Inc. v. Pulaski Cty. Ambulance Dist.*, 422 S.W.3d 469, 471 (Mo. App. S.D. 2014). As such, a plaintiff must plead each element of an alleged waiver of sovereign immunity. *Id.* "A reviewing court will construe narrowly any such waiver of sovereign immunity." *Topps v. City of Country Club Hills*, 272 S.W.3d 409, 415 (Mo. App. ED 2008). "The plaintiff shoulders the burden of proving the existence of an insurance policy and proving that the terms of the policy cover the claims asserted by the plaintiff against the municipality." *Id.* In all of his state law claims, plaintiff purports to allege that sovereign immunity is not applicable to the claims against defendant City. However, the second amended complaint is insufficient on its face to overcome sovereign immunity.

Plaintiff attempts to allege a waiver of sovereign immunity by alleging that the City obtains "insurance" from an entity known as the Public Facilities Protection Corporation, but avers that this entity is a not-for-profit corporation, not an insurer.  [Doc. 34, ¶¶ 199-203, 214-216,226-228;236-238; 243-245; 260-262]. In an effort to paper over this deficiency, plaintiff alleges that the "PFPC" agreement with the City is a self-insurance plan, [Doc. 34, ¶¶ 199-203, 214-216,226-228;236-238; 243-245; 260-262] , but "self-insurance," by definition, involves no third party.

These allegations are insufficient to surmount defendant City's sovereign immunity. Nothing in the second amended complaint avers that plaintiff's claims in fact fall within either the specific purposes "covered by such policy of insurance...." or the specific "purposes provided in any self-insurance plan duly adopted by the governing body of any political subdivision of the state." §537.610, RSMo; see also *Hummel v. St. Charles City R-3 School Dist.*, 114 S.W.3d 282, 284 (Mo. App. E.D. 2003)("Whether sovereign immunity is waived in a particular case depends

12

on whether the plaintiff's claim falls within the purposes covered by the defendant's policy."). There is nothing in the complaint to show that the City's reliance on the PFPC to pay claims is in fact the purchase of insurance or is a self-insurance plan duly adopted by the governing body of the City of St. Louis. §537.610.1, RSMo. It would be remarkable indeed if the City opted to "self-insure" intentional torts of its officers. Moreover, the second amended complaint on its face indicates that the so-called PFPC is treated as though it were part of City government, so that it cannot be considered an insurance company as defined by law, Mo.Rev.Stat. §375.001.2(1). Finally, the second amended complaint does not allege that the City's governmental body has adopted a self-insurance plan, as that would require an ordinance, and no ordinance is pleaded. Accordingly, Plaintiff's allegations that sovereign immunity has been waived in this case must fail.

The Court should dismiss Counts V, VI, VII, VIII, IX, X, XI, and XIII, of plaintiff's complaint against defendants Boyher, Leyshock, Sachs, Jemerson, Karnowski, and Rossomanno because these state-law claims are barred by Missouri's official immunity doctrine. Under Missouri law, the doctrine of official immunity provides that "public officials acting within the scope of their authority are not liable in tort for injuries arising from their discretionary acts or omissions." *Seiner v. Drenon*, 304 F.3d 810, 813 (8th Cir. 2002). The official immunity doctrine applies to protect public officials from an action for damages arising from their discretionary acts or omissions while acting within the scope of their authority. *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. banc 2008) (citing *Davis*, 193 S.W.3d at 763). A discretionary act is one that requires the exercise of reason in the adoption of means to an end and discretion in determining how or whether an act should be done or course pursued. *Southers*, 263 S.W.3d at 610 (citing *Kanagawa v. State*, 685 S.W.2d 831, 836 (Mo. banc 1985)). Factors to consider

include the nature of the officials' duties, the extent to which the acts involve policymaking or the exercise of professional expertise and judgment and the likely consequences of withholding immunity. *Id.* Official immunity is intended to provide protection for individual government actors who, despite limited resources and imperfect information, must exercise judgment in the performance of their duties. *Davis*, 193 S.W.3d at 765. Its goal is also to permit public employees to make judgments affecting public safety and welfare without concerns about possible personal liability. *Id.*

A police officer's decision to use force in the performance of his duties is discretionary rather than ministerial, unless done in bad faith or with malice. *Davis v. White*, 794 F.3d 1008, 1013 (8th Cir. 2015). "A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." *Id.* "Bad faith" means "conscious wrongdoing" or "breach of a known duty through some ulterior motive." *Id.* (quotations omitted).

The allegations of the complaint as a whole reflect a difficult situation which defendants arguably could believe constituted interference or an attempt to interfere with an arrest--conduct proscribed by state law. §575.150, RSMo. The officer utilized professional expertise and judgment in responding to the situation. This is the type of discretionary act which official immunity protects. As the Missouri Supreme Court has noted, police officers "despite limited resources and imperfect information, must exercise judgment in the performance of their duties." *Davis*, 193 S.W.3d at 765. By Missouri law, they are protected from liability when doing so.

Plaintiff generically alleges "bad faith" and "malice" on the part of "defendants," e.g., [doc. 34, ¶¶ 202, 207, 229, 239, 246, and 263], but he does not allege with particularity any facts showing such bad faith or malice. In particular, it is difficult to infer how defendants' alleged

conduct or inaction could amount to bad faith or malice. Under *Davis*, Missouri's official immunity doctrine clearly shields defendants from liability absent proof of bad faith or malice. Therefore, plaintiff's individual capacity state law claims against defendants Boyher, Leyshock, Sachs, Jemerson, Karnowski, and Rossomanno are barred by official immunity and should be dismissed.

### Conclusion

For the foregoing reasons, Defendants submit that the second amended complaint [doc. 34] can and must be dismissed as to defendant City. In the alternative, defendant City requests that ¶¶ 19-24, 26-27, 36-39, 52, and 117-127 be stricken from the complaint and no answer thereto required.  Defendants further request any other such relief as the Court deems appropriate.

Respectfully submitted,

JULIAN L. BUSH,
CITY COUNSELOR

*/s/Robert H. Dierker 23671MO*
Robert H. Dierker
Associate City Counselor
dierkerr@stlouis-mo.gov
Brandon Laird
Associate City Counselor
Abby Duncan 67766MO
Assistant City Counselor
Meghan Bruyns 69987MO
Assistant City Counselor
Amy Raimondo 71291MO
Assistant City Counselor
314 City Hall
1200 Market St.
St. Louis, MO  63103
314-622-3361
FAX 314-622-4956

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 28, 2019, the foregoing was electronically filed with the

Clerk of the Court to be served by operation of the Court's electronic filing system.

<u>*/s/ Amy M Raimondo*</u>
Amy M. Raimondo
Assistant County Counselor

16