UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| BRIAN BAUDE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:18-CV-1564-RWS |
| | ) | |
| CITY OF ST. LOUIS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

# **MEMORANDUM AND ORDER**

This matter is before me on defendants' motion to dismiss pursuant to Fed. R. Civ. P. 8 and Fed. R. Civ. P. 12(b)(6). Plaintiff Brian Baude brings a series of claims under 42 U.S.C. §1983 alleging violations of his First and Fourth Amendment rights, as well as supplemental state law claims, against several St. Louis Metropolitan Police Department ("SLMPD") Officers and the City of St. Louis (the "City) for their actions during the protests following the September 15, 2017, verdict in State of Missouri v. Stockley.[1] Baude claims that he was illegally "kettled,"[2] sprayed with pepper spray without warning, and arrested while observing and documenting the protest on September 17, 2017. This is one of several cases arising out of the protest activity following the Stockley verdict.[3]

---

[1] State v. Stockley, No. 16220CR02213-01 (Mo. 22nd. Jud. Cir. Sep. 15, 2017).
[2] According to the complaint, "kettling" is a law enforcement tactic by which officers encircle a group of protestors without providing a means of egress. [ECF No. 34 at 11-13].
[3] *See* Aldridge v. City of St. Louis, MO, No. 4:18-CV-1677-CAS, 2019 WL 1695982 (E.D.MO.

**BACKGROUND**

Plaintiff Baude filed this action on September 17, 2018 and filed his first amended complaint on January 9, 2019. On February 15, 2019, he filed his second amended complaint asserting the following claims under 42 U.S.C. §1983: that the individual defendants violated Baude's First and Fourteenth Amendment rights to freedom of speech and assembly (Count 2), that the individual defendants violated his Fourth and Fourteenth Amendment rights to freedom from unreasonable seizure (Count 1) and freedom from excessive use of force (Count 12), that the city and the individual defendants conspired to deprive him of his civil rights (Count 3), and that the City is liable under Monell[4] because the violations of his civil rights were caused by a policy, practice or custom of the City and by its failure to train, discipline or supervise its police officers (Count 4). Baude also brings a number of supplemental state law claims for false arrest, false imprisonment, abuse of process, malicious prosecution, intentional infliction of emotional distress, or alternatively negligent infliction of emotional distress, and battery (Counts 5-11 and 13). As relief Baude seeks compensatory damages, punitive damages, attorneys' fees, expenses, and costs on his §1983 claims, and punitive damages on

---

April 17, 2019); Laird v. City of St. Louis, MO, No. 4:18-CV-1567-AGF, (E.D.MO June 27, 2019); Laney v. City of St. Louis, No. 4:18-CV-1575-CDP, 2019 WL 2423308 (E.D.MO June 10, 2019).
[4] Monell v. Department of Soc. Servs. of City of New York, 436 U.S. 658 (1978).

his state law claims.

The defendants filed a motion to dismiss the original complaint on December 19, 2018. They then moved to dismiss the second amended complaint in its entirety under Fed. R. Civ. P. 8(a) and the plaintiff's §1983 claims for failure to state a claim under Fed. R. Civ. P. 12(b)(6). As to the state law claims, the defendants move to dismiss them under Fed. R. Civ. P. 12(b)(6) arguing the City is entitled to sovereign immunity and the individual defendants' are entitled to official immunity under Missouri tort law. Alternatively, the defendants move to strike certain paragraphs of the amended complaint under Fed. R. Civ. P. 12(f).

## STATEMENT OF FACTS

The Circuit Court of the City of St. Louis issued its findings and verdict in Stockley on September 15, 2017, prompting protests in the St. Louis metropolitan area. The protests lasted throughout the weekend of September 15, 2017 and into the following week. Although the Stockley verdict prompted the protests, they addressed broader issues, including racism and the use of force by local police and law enforcement. Based on the complaint and construed in the light most favorable to the plaintiff, the following events occurred.

On the night of September 17, 2017, Baude was at his home in downtown St. Louis when he learned about protesters allegedly destroying property nearby. Based on this information, Baude decided to act as a neutral observer,

documenting protest related activity. He left his home around 9:30 pm, which unbeknownst to Baude was approximately forty minutes after the SLMPD declared the gathering unlawful and issued its initial dispersal order in response to the property damage caused by some of the protesters.

While walking in the downtown area, Baude saw a few broken flower pots and other property damage near the St. Louis Public Library. He also saw a group of police officers on bicycles who were in what appeared to be a staging area nearby. Baude made his way to the intersection of Tucker Boulevard and Locust, where he saw a line of police officers east of the intersection on Locust. Shortly after he arrived at the intersection, SLMPD gave an order instructing everyone gathered at the intersection to leave by walking north on Tucker. Baude followed these instructions and proceeded up Tucker to Washington. From the intersection of Tucker and Washington, Baude observed that the line of police from Locust had advanced north on Tucker behind the dispersing crowd, taking up a position at Tucker and St. Charles Street.

Approximately forty-five minutes elapsed after the SLMPD ordered the crowd to leave the Locust and Tucker intersection, when Baude notice lines of police officers blocking Washington Avenue to the east and west. During that time a number of individuals from shops, restaurants, and residential buildings on Washington Avenue joined the crowd. No dispersal order or other instruction was

given by the SLMPD during this time. At this point the lines of police officers began to converge on the crowd, confining them to the intersection of Washington and Tucker. The plaintiff refers to this tactic as "kettling."

When Baude noticed the lines of officers blocking the crowd, he approached an officer and asked where he should go. The officer told him it was too late to leave. Baude then approached another officer to ask if there was any way he could be helpful. The officer grabbed him by the lapels and pushed him back into the intersection. Then without warning Baude was sprayed on the back and right side of his head with pepper spray. Other officers also indiscriminately sprayed compliant and peaceful citizens in the intersection. Baude believes the officers were targeting individuals recording the events. The SLMPD then arrested Baude, zip-tied his hands, and lined him up with others against a building on Tucker. Baude was taken to the City Justice Center, where he was subject to a search and held for fourteen hours in an overcrowded cell. Baude was given a court date, which was later cancelled. Since then he has received no further information about any outstanding charges against him.

Baude claims that the events of September 17, 2017, had a chilling effect on his expressive activity and that he no longer records incidents involving police and protestors. Baude also claims he suffered anxiety because he feared he may lose his job and felt a profound sense of injustice. Additionally, as an officer in the Air

5

National Guard, Baude had to report the incident immediately to his supervisors and during his security clearance renewal process.

In addition to the factual allegations regarding the protests on the night of September 17, 2017, the complaint also details other allegations of SLMPD's use of chemical agents against protestors without warning, use of excessive force, and the history of litigation against the City for these types of incidents.

## LEGAL STANDARD

The purpose of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is to test the legal sufficiency of the complaint. When considering a Rule 12(b)(6) motion, I must assume the factual allegations of the complaint to be true and construe them in favor of the plaintiff. Neitzke v. Williams, 490 U.S. 319, 326-27 (1989). I am not, however, bound to accept as true a legal conclusion couched as a factual allegation. Bell Atlantic Corporation v. Twombly, 555 U.S. 544, 555 (2007).

To survive a Rule 12(b)(6) motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S.C. 662, 667, 129 S.Ct. 1937, 1949 (quoting Twombly, 555 U.S. at 570). Although "specific facts are not necessary," the plaintiff must allege facts sufficient to "give fair notice of what the ... claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93

(2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

A plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." Id. at 562 (quoted case omitted). This standard "simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." Id. at 556. The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his claim." Bell Atlantic Corp., 550 U.S. at 556.

## DISCUSSION

### A. Motion to Dismiss under Rule 8(a)

Defendants move to dismiss the plaintiff's complaint for failure to comply with Fed. R. Civ. P. 8 because "it is replete with tendentious, inflammatory, and immaterial allegations attacking the integrity of Missouri courts, injecting issues to which defendants cannot possibly frame a response, and including voluminous exhibit and references to other litigation…" [ECF No. 37 at 2]. In particular, the defendants challenge the plaintiff's inclusion of information about State v. Stockley and details of the City's past litigation regarding the SLMPD's use of

7

chemical agents and force against protestors. Alternatively, the defendants move to strike these paragraphs under Fed. R. Civ. P. 12(f) as immaterial or impertinent.

Under Rule 8(a), a pleading that states a claim for relief must include a "short and plain statement of the claim," showing the pleader is entitled to relief. Under Twombly and Iqbal, the plaintiff must show plausibility, not mere possibility. Therefore, complaints now "tend to include more factual detail and be longer than before. Aldridge v. City of St. Louis, MO, No. 4:18-CV-1677 CAS, 2019 WL 1695982, at *4 (ED. Mo. Apr. 17, 2019). In this case, Baude's second amended complaint uses numbered paragraphs, separately identifies the defendants, makes specific factual allegations against them, and sets forth separate counts that identify each claim and the defendant(s) against whom it is asserted. Thus, the Complaint is not so disorganized, vague, or ambiguous as to be unintelligible. See Cf. Michaelis v. Nebraska State Bar Ass'n, 717 F.2d 437, 439 (8th Cir. 1983) (affirming dismissal of a 98-page pro se complaint, the "style and prolixity" of which "would have made an orderly trial impossible."); Smith v. Republic Servs., Inc., 2017 WL 4038143, at *3 (E.D. Mo. Sept. 13, 2017) (dismissing complaint under Rule 12(b)(6), noting it violated Rule 8(a) because it did not contain numbered paragraphs, was "overly wordy with an incomprehensible pattern of capitalized and not capitalized words," and failed to clearly identify each defendant by name and articulate specific facts about that

defendant's wrongful conduct).

Additionally, the factual allegations and supporting exhibits that the defendants argue are immaterial are relevant to the plaintiff's Monell claim. Therefore, the motion to dismiss the claims under Fed. R. Civ. P. 8, or in the alternative to strike certain paragraphs under Fed. R. Civ. P. 12(f), is denied.

**B.      Motion to Dismiss under Rule 12(b)(6)**

   1.      Counts 1, 2, & 12 - §1983 Claims against Individual Defendants

Although the doctrine of *respondeat superior* does not apply to §1983 cases,[5] supervisors can still be held liable for their role in constitutional violations. Specifically, supervisors can be held liable under §1983 "(1) if the supervisor directly participated in the constitutional violation; (2) if the supervisor failed or refused to intervene when a constitutional violation took place in his presence; (3) if the supervisor's failure to train or supervise the employee caused the constitutional violation; or (4) if the supervisor created a policy or custom under which the constitutional violation occurred." B.J.G.ex rel. McCray v. St. Charles City Sheriff, No. 4:08-CV-1178-CDP, 2010 WL 1838414, at *3 (E.D.Mo May 6, 2010) (citations omitted), aff'd sub nom. B.J.G. ex rel McCray v. St. Charles City Sheriff, 400 F. App'x 127 (8th. Cir. 2010); also  Lansdown v. Chadwick, 152 F.Supp.2d 1128, 1146 (W.D.Ark.2000);  Webster v. Gibson, 913 F.2d 510, 514

---

[5] See Monell, 436 U.S. 658 (1978)

(8th Cir.1990) (direct participation); Putman v. Gerloff, 639 F.2d 415, 423 (8th Cir.1981) (failure to intervene); Tilson v. Forrest City Police Dep't., 28 F.3d 802, 806 (8th Cir.1994) (failure to train or supervise); Williams v. Smith, 781 F.2d 319, 323–34 (2d Cir.1986) (policy or custom); Whisman Through Whisman v. Rinehart, 119 F.3d 1303, 1311 (8th Cir. 1997) (policy or custom).

As an initial matter, the defendants only address the supervisors' individual liability under §1983 as it pertains to the plaintiff's excessive force claim in Count 12. The motion to dismiss does not address the plaintiff's unreasonable seizure claim in Count 1 or his First Amendment claim in Count 2. Therefore, I assume the motion to dismiss the plaintiff's §1983 claims against the individual officers is only directed at Count 12.

In Count 12, the plaintiff alleges that the officers' use of zip-cuffs, kettling, and pepper spray were objectively unreasonable and constituted excessive force. Assuming, without deciding, that these actions could constitute excessive force,[6] the plaintiff has alleged sufficient facts to plausibly claim the supervisory officers had direct roles in these actions. Specifically, the plaintiff alleges the supervisory officers planned, approved, and executed the kettling and mass arrest. Accordingly, the motion to dismiss the §1983 claims for excessive force is denied.

---

[6] The motion to dismiss does not challenge the plaintiff's contention that each of these actions constitute excessive force. See Defendants' Motion to Dismiss, ECF No. 37 at 10.

### 2. Count 4 - Monell Liability

The plaintiff alleges the City is liable under §1983 for the individual defendants' alleged violations of his First and Fourth amendment rights. The plaintiff alleges these constitutional violations were caused by the policies, practices, and customs of the SLMPD as described below:

a. SLMPD officers' routine use of excessive force when policing protests, especially those at which police brutality is being protested;

b. SLMPD's custom or policy of using kettling without warning on citizens who are not resisting arrest and who are exercising First Amendment rights, whether those rights be protesting or reporting;

c. SLMPD's policy or custom of issuing vague and even contradictory dispersal orders without giving an opportunity to comply;

d. SLMPD's policy of arbitrarily declaring unlawful assemblies in the absence of any threat or force or violent activity that provides no notice to citizens of unlawful conduct;

e. SLMPD's custom, policy, or practice of violating the Fourth Amendment by regularly conducting unreasonable seizures and arresting individuals without probable cause.

[ECF No. 34, ¶189]. The Plaintiff also alleges the City is liable under §1983 for

failure to train, supervise, and discipline its officers. [ECF No. 34, ¶ 190].

In order to state a claim for §1983 liability against a municipality, the plaintiff must show that a constitutional violation resulted from (1) an official municipal policy, (2) and unofficial custom, or (3) a deliberately indifferent failure to train or supervise. Corwin v. City of Independence, MO, 829 F.3d 695, 699 (8th. Cir. 2016). The defendants argue that the plaintiff has failed to establish any of these bases for liability.

      a.     Official Policy or Custom or Practice

In Monell v. Department of Social Services of City of New York, the Supreme Court held that municipalities may be liable under §1983 when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or when the "constitutional deprivations [are] visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." Monell, 436 U.S. at 690-91. In order to establish liability under §1983, the custom must be "so widespread as to have the force of law." Board of Cty. Comm'rs of Bryan Cty., Okla. V. Brown, 520 U.S. 397, 404 (1997). To establish liability based on a custom, the plaintiff must demonstrate (1) the existence of a continuing, widespread persistent pattern of unconstitutional misconduct; (2) deliberate

indifference to or tacit authorization of such conduct by policy making officials after they have notice of the conduct; and (3) that the municipality's custom was the moving force behind the constitutional violation. Johnson v. Douglas Cty. Med. Dep't, 725 F.3d. 825, 828 (8th. Cir. 2013); Laney v. City of St. Louis, No. 4:18-CV-1575-CDP, 2019 WL 2423308 (E.D.Mo June 10, 2019).

The plaintiff need not identify the specific policy or custom that caused the constitutional violation to survive a motion to dismiss. Crumpley-Patterson v. Trinity Lutheran Hosp., 388 F.3d. 588, 591 (8th. Cir. 2004). But he must allege facts sufficient to support an inference that the conduct complained of resulted from the existence of an unconstitutional policy or custom. Id.

In this case, the plaintiff alleges that specific policies and practices exist and were the moving force behind the violations of his constitutional rights. Moreover, the second amended complaint contains numerous factual allegations that support an inference that the conduct complained of resulted from the alleged policies and practices. In particular, the plaintiff alleged facts sufficient to establish a pattern of misuse of chemical agents against peaceful protesters by the SLMPD. The plaintiff points to several incidents in May 2015, August 2015, and July 2017, where the SLMPD deployed chemical agents against peaceful protestors. The plaintiff also alleges SLMPD used chemical agents against peaceful protestors on September 15, 2017, just two days before the incident in question. Moreover, the plaintiff alleges

SLMPD's use of chemical agents on these occasions violated a settlement agreement the City entered into in March 2015 in Templeton,[7] which prohibited its use of chemical agents against groups of people engaged in peaceful, non-criminal activity without first issuing a clear warning.

These allegations are sufficient to support the inference that an unconstitutional policy or practice existed and was the moving force behind Baude's alleged harm. Accordingly, the motions to dismiss the Monell claim based on an unconstitutional policy or practice is denied.

      b.     Failure to Train or Supervise

A municipality can be liable for a failure to train or supervise under §1983 only "where the failure to train [or supervise] amounts to deliberate indifference to the rights of persons with whom the police came into contact." City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989). In order to state a claim for relief under §1983 for a failure to train, the plaintiff must demonstrate that (1) the training and supervision practices were inadequate, (2) the City was deliberately indifferent to the rights of others in adopting the training and supervision policies and practices, and (3) the alleged training and supervisory deficiencies caused the constitutional depravations. Ulrich v. Pope County, 715 F,.3d. 1054, 1061 (8th. Cir. 2013). Ultimately, the plaintiff must show that the City "had notice that the training

---

[7] Templeton, et al. v. Dotson, et al., No. 4:17-CV-2455-CDP (E.D.Mo).

14

procedures and supervision were inadequate and likely to result in a constitutional violation." Brewington v. Keener, 902 F.3d 796, 803 (8th. Cir. 2018).

Although the plaintiff alleged sufficient facts to establish the existence of a pattern or practice of the use of force against peaceful protestors, he did not allege facts sufficient to state a claim under a failure to train or supervise theory. The complaint does not provide any facts indicating the current training program is inadequate or that the City was deliberately indifferent when it adopted the training policies. The complaint merely offers conclusory statements about the City's failure to train or supervise its officers. Therefore the §1983 claim against the city is dismissed to the extent it relies on the failure to train theory of liability.

3. Count 3 - Civil Conspiracy

In order to state a claim for conspiracy under 42 U.S.C. § 1983, the "plaintiff must show: (1) that the defendant conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff." White v. McKinley, 519 F.3d 806, 814 (8th Cir. 2008) (internal citation omitted). The first element "requires allegations of specific facts tending to show 'meeting of the minds' among the alleged conspirators." Murray v. Lene, 595 F.3d 868, 870 (8th Cir. 2010).

The defendants argue that the conspiracy claim is barred by the

intracorporate conspiracy doctrine. The defendants rely primarily on Kelly v. City of Omaha. But Kelly deals with a conspiracy claim under 42 U.S.C. §1985, not §1983. The Eighth Circuit has not addressed whether the intracorporate conspiracy doctrine applies to §1983 conspiracy claims.[8] Powers v. City of Ferguson, 229 F.Supp.3d 894, 905 (E.D.Mo 2017). Additionally, judges in this district –including in other Stockley protest cases – have declined to extend the doctrine to §1983 cases, especially at the pleading stage. See Aldridge, 2019 WL at *8; Laird, 2019 WL at *5; Powers, 229 F.Supp.3d at 906; Anzaldua v. Northeast Ambulance and Fire Protection District, 2014 WL 466234, at *8 (E.D. Mo. 2015) ; Golden v. Moutray, 2018 WL 1784395, at *4 (E.D. Mo. 2018).

The defendant also argues the conspiracy claim must fail because the underlying §1983 claims fail. However, several §1983 claims against the defendants will survive the motion to dismiss. Therefore, it is premature to dismiss the conspiracy claim. Accordingly, the defendants' motion to dismiss the plaintiff's §1983 conspiracy claim will be denied.

    4.    Counts 5-11 & 13 - State Law Claims

        a.    Sovereign Immunity

"[I]n the absence of an express statutory exception to sovereign immunity,

---

[8] The parties did not point me to any Eighth Circuit cases addressing the application of the intracorporate conspiracy doctrine in §1983 conspiracy claims, nor has my search uncovered any such cases.

or a recognized common law exception such as the proprietary function and consent exceptions, sovereign immunity is the rule and applies to all suits against public entities[.]" Metro. St. Louis Sewer Dist. v. City of Bellefontaine Neighbors, 476 S.W.3d 913, 921-22 (Mo. 2016).

Missouri law provides three statutory exceptions to sovereign immunity. See RSMo. § 537.600.1 and RSMo. § 537.610. Of relevance in this case is RSMo. § 537.610, which provides for waiver of sovereign immunity when a political subdivision purchases liability insurance to cover certain tort claims. RSMo. § 537.610.1; see also Hammer v. City of Osage Beach, 318 F.3d 832, 841 (8th Cir. 2003). This waiver is a limited one, waiving immunity only to the extent the plaintiff's claim falls within the purposes covered by the policy. RSMo. § 537.610.1; see also Hummel v. St. Charles City R-3 School District, 114 S.Wd. 282, 284 (Mo. Ct. App. 2003). "[A] plaintiff must specifically plead facts demonstrating that the claim is within this exception to sovereign immunity." Epps v. City of Pine Lawn, 353 F.3d 588, 594 (8th Cir. 2003). In this case, the plaintiff must plead facts sufficient to allege the existence of insurance and that the insurance covers the plaintiff's claim.

As to each state law claim, Plaintiffs have pleaded that the City obtains insurance through the Public Facilities Protection Corporation ("PFPC"), a not for profit corporation into which the City pays funds yearly; that the funds are later

disbursed by the corporation to pay claims against the City; and that, alternatively, the City's relationship with the PFPC serves as a self-insurance plan because, as described in the 2017 Comprehensive Annual Financial Report for the City of St. Louis, "its sole purpose is to provide the City with a defined and funded self-insurance program for claims, judgments, and other related legal matters." E.g., [ECF No. 34 ¶¶ 199-201].

I agree with the other judges in this District who have held that the same or similar allegations of PFPC insurance or self-insurance are sufficient at this stage to demonstrate that Plaintiffs' state-law tort claims fall within an exception to sovereign immunity under § 537.610.1. See, e.g., Aldridge, 2019 WL 1695982, at *13; Laney, 2019 WL 2423308, at *7. The plaintiff alleges that PFPC serves as insurance against *all* claims [ECF No. 34 at ¶¶ 199 and 200], thus covering the claims at issue here. Accordingly, I will deny the motion to dismiss the state law tort claims on the basis of sovereign immunity.

   b. Punitive Damages

Plaintiffs concede that they cannot recover punitive damages against the City on their state law claims. See RSMo. § 537.610.3; City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981). Because Plaintiff's claims against the individual defendants in their official capacities are equivalent to claims against the City, plaintiffs are likewise barred from recovering punitive damages from the

18

officers in their official capacities. Accordingly, I will strike plaintiffs' requests for punitive damages on their state law claims against the City and against the officers in their official capacities.

  c. Official Immunity

Under Missouri law, the doctrine of official immunity protects public officials, acting within the scope of their authority, from personal liability for torts arising from their discretionary acts. Reasonover v. St. Louis Cty., Mo., 447 F.3d 569, 585 (8th Cir. 2006). But "official immunity is a qualified immunity and does not apply to discretionary acts done in bad faith or with malice." Id. "Acting with malice requires an actual intent to cause injury." Wealot v. Brooks, 865 F.3d 1119, 1129 (8th Cir. 2017) (citing State ex rel. Twiehaus v. Adolf, 706 S.W.2d 443, 447 (Mo. 1986)). "A finding of bad faith embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, or breach of a known duty through some ulterior motive." Id. "A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." Davis v. White, 794 F.3d 1008, 1013 (8th. Cir. 2015) (quoting Adolf, 706 S.W.2d 443, 447 (Mo. 1986))

"[A] police officer's decision to use force in the performance of his duties is discretionary rather than ministerial." Davis, 794 F.3d at 1013 (internal citation

omitted). The officers' actions are entitled to official immunity unless there are sufficient facts that support an inference the officer acted in bad faith or with malice. At this stage, the plaintiff's allegations provide sufficient facts to support an inference that the individual defendants acted in bad faith or with malice by participating in the "kettling," the use of pepper spray without warning, and the indiscriminate arrests of individuals attending the protest. See Aldridge, 2019 WL 1695982, at *14; Laney, 2019 WL 2423308, at *8. Accordingly, I will deny the motion to dismiss the state law claims.

Accordingly,

**IT IS HEREBY ORDERED** that defendants motion to dismiss [ECF No. 36] is **GRANTED** as to punitive damages on the state-law claims and municipal liability under the failure to train or supervise theory but in all other respects is **DENIED**.

**IT IS FURTHER ORDERED** that the defendants motion to dismiss filed prior to the second amended compliant [ECF No. 19] is **DISMISSED** as moot.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 30th day of September 2019.