# United States Court of Appeals
*For The Eighth Circuit*

Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

January 27, 2022

Ms. Abby Joe Duncan
CITY COUNSELOR'S OFFICE
314 City Hall
1200 Market Street
Saint Louis, MO  63103-0000

RE:  20-2864  Brian Baude v. Gerald Leyshock, et al

Dear Counsel:

The court has issued an opinion in this case. Judgment has been entered in accordance with the opinion. The opinion will be released to the public at 10:00 a.m. today. Please hold the opinion in confidence until that time.

Please review Federal Rules of Appellate Procedure and the Eighth Circuit Rules on post-submission procedure to ensure that any contemplated filing is timely and in compliance with the rules. Note particularly that petitions for rehearing and petitions for rehearing en banc <u>must</u> be received in the clerk's office within 14 days of the date of the entry of judgment. Counsel-filed petitions must be filed electronically in CM/ECF. Paper copies are not required. No grace period for mailing is allowed, and the date of the postmark is irrelevant for pro-se-filed petitions. Any petition for rehearing or petition for rehearing en banc which is not received within the 14 day period for filing permitted by FRAP 40 may be denied as untimely.

Michael E. Gans
Clerk of Court

CRJ

Enclosure(s)

cc: Mr. Robert Henry Dierker Jr.
Ms. Kiara N. Drake
Mr. Javad Mohammed Khazaeli
Mr. Brandon David Laird
Mr. Gregory J. Linhares
Ms. Erin K McGowan
Ms. Amy Raimondo
Mr. Andrew D. Wheaton
Mr. James R. Wyrsch

District Court/Agency Case Number(s):   4:18-cv-01564-RWS

# United States Court of Appeals
*For The Eighth Circuit*

Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

January 27, 2022

West Publishing
Opinions Clerk
610 Opperman Drive
Building D D4-40
Eagan, MN 55123-0000

    RE:  20-2864  Brian Baude v. Gerald Leyshock, et al

Dear Sirs:

    A published opinion was filed today in the above case.

    Counsel who presented argument on behalf of the appellants and appeared on the appellants' brief, was Abby Joe Duncan, of Saint Louis, MO. The following attorney(s) also appeared on the appellants' brief;  Brandon David Laird, of Saint Louis, MO.,  Robert Henry Dierker, Jr., of Saint Louis, MO.,  Amy Raimondo, of Saint Louis, MO.

    Counsel who presented argument on behalf of the appellee and appeared on the appellee's brief, was Javad Mohammed Khazaeli, of Saint Louis, MO. The following attorney(s) also appeared on the appellee's brief;  Nathaniel R. Carroll, of Saint Louis, MO.,  James R. Wyrsch, of Saint Louis, MO.,  Kiara N. Drake, of Saint Louis, MO.,  Maureen Hanlon, of Saint Louis, MO.

    The judge who heard the case in the district court was Honorable Rodney W. Sippel. The judgment of the district court was entered on August 4, 2020.

    If you have any questions concerning this case, please call this office.

                                                    Michael E. Gans
                                                    Clerk of Court

CRJ

Enclosure(s)

cc:  MO Lawyers Weekly

    District Court/Agency Case Number(s):   4:18-cv-01564-RWS

United States Court of Appeals

For the Eighth Circuit

_____

No. 20-2864
_____

Brian Baude

*Plaintiff - Appellee*

v.

Gerald Leyshock, et al.

*Defendants - Appellants*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: September 28, 2021
Filed: January 27, 2022
_____

Before KELLY, ERICKSON, and GRASZ, Circuit Judges.
_____

ERICKSON, Circuit Judge.

   This case is one of many arising out of the protests and unrest that occurred after Officer Jason Stockley was acquitted of the murder of Anthony Lamar Smith on September 15, 2017. Following his arrest, Brian Baude sued the City of St. Louis, Missouri, and various police officers of the St. Louis Metropolitan Police Department ("SLMPD"), alleging claims under 42 U.S.C. § 1983 for violations of his First, Fourth, and Fourteenth Amendment rights and conspiracy to violate those

rights, and under Missouri state law. Baude alleges that on September 17, 2017, he and others were boxed into an intersection by SLMPD officers, pepper sprayed, arrested, and restrained with zip ties. The officers asserted the defense of qualified immunity on the § 1983 claims. The district court[1] denied, in part, the officers' motion for judgment on the pleadings, and they filed this interlocutory appeal. "An interlocutory order denying a motion to dismiss based on qualified immunity is immediately appealable." Stanley v. Finnegan, 899 F.3d 623, 625 (8th Cir. 2018). Reviewing the denial of qualified immunity *de novo*, we affirm.

I.   BACKGROUND

Our review of the denial of the motion to dismiss based on qualified immunity is limited to the facts alleged in Baude's lengthy second amended complaint, which we accept as true and view most favorably to Baude. Hager v. Ark. Dep't of Health, 735 F.3d 1009, 1013 (8th Cir. 2013). The parties attached voluminous materials to their pleadings, which we may also consider. See Buckley v. Hennepin Cnty., 9 F.4th 757, 760 (8th Cir. 2021) (noting we may rely on materials necessarily embraced by the pleadings).

According to the allegations in the second amended complaint, between 8:00 p.m. and 9:00 p.m., a handful of individuals broke windows and destroyed flowerpots on Olive Street in downtown St. Louis. There is no evidence or allegation that Baude was in any way involved in the destruction of property. At approximately 8:48 p.m. and 8:51 p.m., Sergeant Brian Rossomanno gave two dispersal orders to the small number of protestors present at the time. Baude, however, was not at the location when the alleged dispersal orders were given.

Over the next two-plus hours, SLMPD officers began blocking roads and directing civilians to the intersection of Washington Avenue and Tucker Boulevard,

---

[1]The Honorable Rodney W. Sippel, Chief Judge, United States District Court for the Eastern District of Missouri.

which is an area containing condominiums, apartment buildings, and businesses, including restaurants and bars. While many of the individuals present were loitering and milling about the area, a small group of individuals were loudly reminding the officers of their right to assemble. Some sat down on the road, although a vehicle was captured on video driving slowly down the street, unimpeded by the group. Baude, who lived near the intersection, saw reports on social media that protestors had destroyed property in the area, and he decided to go out and investigate. Baude left his home around 9:30 p.m., completely unaware of the earlier dispersal orders.

Lieutenant Timothy Sachs presented to Lieutenant Colonel Gerald Leyshock his proposal to not let anyone leave the vicinity of Washington Avenue and Tucker Boulevard and to arrest everyone present. As alleged in the second amended complaint, Lieutenant Colonel Leyshock approved this course of action. Around 11:15 p.m. or 11:20 p.m., SLMPD officers began forming four perimeter lines, extending across the streets and sidewalks on Washington Avenue and Tucker Boulevard. The SLMPD officers surrounded, squeezed, and eventually blocked anyone from leaving the intersection of Washington Avenue and Tucker Boulevard in a technique Baude describes as "kettling."

When Baude observed the police herding the bystanders into a confined space, he asked to leave the intersection but was informed by SLMPD officers that it was too late. In addition to Baude, those being contained by the SLMPD officers included downtown residents, business patrons, protestors, observers, and members of the press. Video evidence documented multiple citizens approaching SLMPD officers and requesting permission to leave. Their requests were not only ignored but also met with commands to "get back!" Video evidence also shows SLMPD officers grabbing an African American male, who was outside the kettle, and throwing him inside the kettle. Although an SLMPD officer suffered a serious injury during this ordeal, the second amended complaint alleges that the injured officer was an African American undercover SLMPD officer who was pepper sprayed and beaten by his fellow uniformed SLMPD officers.

Although the officers assert that they announced dispersal and unlawful assembly warnings in-person and via public address, the number of orders and who heard them is disputed. Baude, having been herded into the intersection by SLMPD officers and unable to leave, was pepper sprayed by an unnamed SLMPD officer and arrested as part of a mass arrest. Baude alleges that during the course of his arrest and detention, his hands were zip-tied, and he was transported to the City Justice Center where he was searched and held for fourteen hours. Baude was eventually released with a court date, which was later cancelled.

Baude further alleges that individuals inside the kettle with him, who were not acting violently or aggressively, were indiscriminately and repeatedly doused with chemical agents without warning. Others were kicked, beaten, and dragged by SLMPD officers. Some individuals who were wearing goggles to protect themselves had their goggles removed by SLMPD officers and then sprayed directly in the face with pepper spray. During the arrests of over 100 people, Baude alleges that SLMPD officers yelled derogatory and homophobic epithets at those being arrested. He alleges that several individuals who had been handcuffed with zip-ties continued to suffer pain and numbness in their hands months after the incident.

In his second amended complaint, Baude included a photograph of at least sixteen smiling SLMPD officers posing with a banner that stated, "Thank you for visiting the Washington Avenue Entertainment District & Neighborhood," which was posted on Twitter by an anonymous person on the night of the mass arrest. In addition, Baude alleges that during and after the arrests, SLMPD officers were observed "high fiving each other, smoking celebratory cigars, taking selfies on their personal phones with arrestees against the arrestees['] will, and chanting 'Whose Streets? Our Streets!'" Baude further alleges that the day after the mass arrest, the SLMPD acting police chief, while standing next to then-St. Louis Mayor Lyda Krewson, reinforced the propriety of the officers' actions by stating, "I'm proud to say the city of St. Louis and the police owned the night." Approximately a year after the mass arrest, four SLMPD officers were indicted for their conduct. The indictment included emails demonstrating that officers were informed ahead of time

-4-

that they would be deployed wearing military-type tactical dress to conceal their identities for the purpose of beating protestors.

Baude alleges that Lieutenant Colonel Gerald Leyshock, Lieutenant Scott Boyher, Lieutenant Timothy Sachs, Sergeant Randy Jemerson, Sergeant Matthew Karnowski, Sergeant Brian Rossomanno, Officer Timothy Bockskopf, and five "John Doe" officers of the SLMPD who removed their name tags from their uniforms in violation of guidance promulgated by the United States Department of Justice and standard law enforcement practices (collectively, the "Officers") violated his constitutional rights when the Officers knew or should have known that there was no probable cause for his arrest and that there was no legal justification for use of force against him. As to Sergeant Rossomanno, Baude specifically alleges he "can be seen on video within arms-length of SLMPD officers who were pepper spraying and beating peaceful and compliant citizens. Rather than instructing these officers to cease violating the civil rights of the citizens, Defendant Rossomanno took control of the situation and directed the officers' unlawful actions."

## II.   DISCUSSION

We have limited jurisdiction over interlocutory appeals involving qualified immunity. We do not have jurisdiction to resolve factual disputes, but we have jurisdiction to consider *de novo* the legal question of whether the Officers are entitled to qualified immunity. Prater v. Dahm, 89 F.3d 538, 540 (8th Cir. 1996). To prevail at this stage in the proceedings, the Officers must show they are "entitled to qualified immunity 'on the face of the complaint.'" Stanley, 899 F.3d at 627 (quoting Bradford v. Huckabee, 394 F.3d 1012, 1015 (8th Cir. 2005)).

"Qualified immunity shields government officials from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." Burbridge v. City of St. Louis, 2 F.4th 774, 780 (8th Cir. 2021) (quoting Brown v. City of Golden Valley, 574 F.3d 491, 495 (8th Cir. 2009)) (internal quotation marks omitted).

-5-

Baude alleges violations of his constitutional rights based on allegations and evidence that he was subjected to an unreasonable seizure and excessive force during the course of his arrest. The Officers counter with arguments that the arrests were based on probable cause sufficient to justify a mass arrest because the crowd was violating various statutes and ordinances as a unit and that the Officers' use of force did not violate clearly established law.

        A.      *Unreasonable Seizure*

The Fourth Amendment prohibits unreasonable seizures. U.S. Const. amend. IV. "A Fourth Amendment seizure occurs when an officer restrains the liberty of an individual through physical force or show of authority," Quraishi v. St. Charles Cnty., 986 F.3d 831, 839 (8th Cir. 2021) (citation omitted), such that "a reasonable person would have believed that he was not free to leave," United States v. Mendenhall, 446 U.S. 544, 554 (1980).

When a person is surrounded by officers on all sides, he would reasonably believe that he is no longer free to leave and that he has been seized. See Brower v. Cnty. of Inyo, 489 U.S. 593, 599 (1989) (holding that setting up roadblocks to stop fleeing suspects is a seizure). It is indisputable that Baude was seized when the Officers indiscriminately encircled all individuals in the area, including protestors, observers, business patrons, and residents simply walking by, and the Officers refused to allow anyone to leave voluntarily. See id.; see also Mendenhall, 446 U.S. at 554. Yet, in order for a seizure to be unconstitutional, the conduct must have been unreasonable.

At the motion to dismiss stage, Baude need only allege sufficient facts to indicate the seizure was unreasonable. In other words, the complaint need only "state a claim to relief that is plausible on its face." Stanley, 899 F.3d at 627 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). We thus consider whether the allegations in Baude's second amended complaint and evidence in the accompanying exhibits submitted by the parties, taken

as true and viewed in Baude's favor, state a plausible claim that the Officers' conduct amounts to an unconstitutional seizure. We find that, at the pleadings stage, Baude has met his burden.

Baude alleges the Officers failed to warn him and the allegedly peaceful group that they were about to be surrounded, herded into a confined area, and arrested. Baude also alleges that he was at all times peaceful, but the Officers denied his request to leave the area. The Officers themselves have admitted that this course of action "was not a model operation." The allegations and the accompanying video of the encounter give rise to a question of fact on the reasonableness of the seizure.

The Officers contend they had at least arguable probable cause to mass arrest the people, including Baude, who they squeezed into the intersection of Washington Avenue and Tucker Boulevard. Like the determination of whether a seizure is reasonable, the lawfulness of the mass arrest is likewise dependent upon resolving underlying questions of fact. A mass arrest may satisfy the Fourth Amendment's protections if the police have "grounds to believe all arrested persons were a part of the *unit* observed violating the law." Bernini v. City of St. Paul, 665 F.3d 997, 1003 (8th Cir. 2012) (citation omitted). This is so even if some innocent bystanders are mistakenly believed to be part of the unit. See id. at 1005 (determining it was objectively reasonable for officers to believe they could arrest all those suspected of being part of the unit while also noting the officers released approximately 200 people in an attempt to avoid custodial arrests of innocent bystanders). Where there is a unit, "the Fourth Amendment d[oes] not require a probable cause determination with respect to each individual in a large and potentially riotous group before making arrests." Id. at 1003.

The allegations and the accompanying video of the encounter give rise to a question of fact related to the reasonableness of the seizure. We are unpersuaded that either Burbridge v. City of St. Louis, 430 F. Supp. 3d 595 (E.D. Mo. 2019), aff'd, 2 F.4th 774 (8th Cir. 2021), or Bernini, 665 F.3d at 1003–04, resolve this issue at the pleadings stage.

-7-

The case of Burbridge, 430 F. Supp. 3d at 604, was decided after the record had been developed and the City of St. Louis and the police officers moved for summary judgment. Similarly, the evidence in the record in Bernini, 665 F.3d at 1002, also at the summary judgment stage, is distinguishable. In Bernini, the crowd chanted in unison, lined up directly across from the police, donned gasmasks and other face coverings as if "preparing for a confrontation," and were otherwise acting or moving as a unit or group. Id. at 1004. Here, Baude alleges, and the video included with the pleadings appears to confirm, that the group of people involved in the mass arrest not only included a few people noisily proclaiming their constitutional right to assemble, but others who were generally gawking and milling about, others on bikes riding through the area, some people sitting on the street and on the sidewalk, and even a person pushing a baby in a stroller. As noted by the district court, there are outstanding factual questions about who heard which declarations related to unlawful assembly and dispersal orders (if any), and whether the arrestees had the requisite intent to commit any of the alleged crimes.

Until the kettle was effectuated by SLMPD officers, people were freely entering and exiting the area even after the Officers purportedly issued dispersal orders. The video evidence does not show any real sense of urgency or confrontation visible in the crowd. There was no attempt by SLMPD officers to separate the subset of people previously engaged in earlier acts of violence or vandalism or any unlawful assembly from the innocent bystanders milling about. The Officers' assertion that they had probable cause or arguable probable cause to believe some members of the crowd violated laws earlier in the day and that "many" were apparently violating the law by refusing to disperse is insufficient to establish a "unit" that may justify a mass arrest as a matter of law. Police may be entitled to qualified immunity protections if they arrest individual offenders with at least arguable probable cause, see White v. Jackson, 865 F.3d 1064, 1074 (8th Cir. 2017), but officers cannot enjoy such protections by alleging that "the unlawful acts of a small group" justify the arrest of the mass, Bernini, 665 F.3d at 1005.

B.     *Excessive Force*

Baude also alleges the Officers violated his constitutional right to be free from excessive force when the Officers "kettled" him, pepper sprayed him, and zip-tied his hands.  "Excessive force claims under the Fourth Amendment are governed by a reasonableness standard."  White, 865 F.3d at 1074 (citing Graham v. Connor, 490 U.S. 386, 395 (1989)).  We evaluate the reasonableness of the force by balancing the "nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  Id. (quoting Graham, 490 U.S. at 396) (internal quotation marks omitted).  This balancing of interests "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Id. (quoting Graham, 490 U.S. at 396) (internal quotation marks omitted).

Baude's right to be free from the alleged types of force was clearly established in September of 2017.  See Johnson v. Carroll, 658 F.3d 819, 828 (8th Cir. 2011) ("throw[ing] to the ground and mac[ing] a nonviolent, suspected misdemeanant who was not fleeing or herself resisting arrest" is unlawful); see also Chambers v. Pennycook, 641 F.3d 898, 907 (8th Cir. 2011) (handcuffing may give rise to a claim for excessive force when officers use more than *de minimis* force).  To establish a constitutional violation, however, Baude must also show the amount of force used was objectively unreasonable under the particular circumstances.  See Graham, 490 U.S. at 397 (stating "the 'reasonableness' inquiry in an excessive force case is an objective one . . . in light of the facts and circumstances").

The pleadings before us and video evidence paint a picture of a compliant individual among a generally peaceful and compliant crowd who was boxed into an intersection by police, pepper sprayed, and forcefully arrested.  Specific questions as to whether "kettling" a crowd was in-and-of-itself excessive force, whether the application of the zip-ties caused the requisite "*de minimis* injury" to establish a

-9-

constitutional violation, or whether Baude was truly compliant cannot be answered on this limited record. Based on the allegations and on this record, we cannot conclude as a matter of law that the force used against Baude, when viewing the alleged facts in a light most favorable to him, was objectively reasonable. LeMay v. Mays, 18 F.4th 283, 287–88 (8th Cir. 2021) (affirming the denial of qualified immunity on a motion to dismiss because "the complaint here states a plausible claim" of a Fourth Amendment violation).

### C. *Supervisory Officers*

Finally, the supervisory officers contend they are entitled to qualified immunity because they did not personally participate in any use of force against Baude, and to the extent that they witnessed any unreasonable force, they either had no time to intervene or else it was reasonable for them to believe the officers were using only the necessary force to accomplish the arrest. Even though an officer has no liability under the doctrines of respondeat superior or supervisor liability, see Wagner v. Jones, 664 F.3d 259, 275 (8th Cir. 2011), at the time of this mass arrest, it was "clearly established that an officer who fails to intervene to prevent the unconstitutional use of excessive force by another officer may be held liable for violating the Fourth Amendment," Nance v. Sammis, 586 F.3d 604, 612 (8th Cir. 2009). Supervisory officers who act with "deliberate indifference toward the violation," Wagner, 664 F.3d at 275 (quoting Ottman v. City of Independence, 341 F.3d 751, 761 (8th Cir. 2003)), or, in other words, are aware that their subordinates' actions create a "substantial risk of serious harm," may be liable if they fail to intervene to mitigate the risk of harm, id. (quoting Kahle v. Leonard, 477 F.3d 544, 551–52 (8th Cir. 2007)) (internal quotation marks omitted).

Baude has alleged that the supervisory officers observed or intended the use of excessive force, and no one intervened to halt it. He has further alleged that the supervisors issued orders allowing their subordinates to use excessive force against an allegedly peaceful crowd. According to Baude's allegations, it was "the coordinated actions of the officers in circling the assembly into the kettle and the

-10-

systematic disbursement of chemical agents, [which made it] clear that these tactics were planned and that senior officials of the SLMPD not only had notice of but actually sanctioned the conduct of Defendants." While these facts are hotly contested, the allegations and the video documenting the incident present issues that need to be resolved by a court with the power to decide facts. And this is not such a court. See Prater, 89 F.3d at 540 (stating the appellate court's jurisdiction is limited and the court must "accept as true all facts pled by" the non-moving party at this stage of litigation). Baude has pled claims of excessive force against the supervising Officers sufficient at this stage in the proceedings to defeat the Officers' qualified immunity defense.

### D. Subordinate Officers

Subordinate police officers cannot escape liability when they blindly follow orders. Rather, their conduct while following orders must be reasonable. We have held that an assisting officer may rely on the probable cause determination and follow the directions of an officer who is directing the arrest "as long as the reliance is reasonable." Ehlers v. City of Rapid City, 846 F.3d 1002, 1010 (8th Cir. 2017) (citing Doran v. Eckold, 409 F.3d 958, 965 (8th Cir. 2005) (en banc)). But here, at the dismissal stage of the proceedings and on the record before us, there are simply too many factual disputes and unknowns to determine as a matter of law that the subordinate officers reasonably relied on their superiors' orders to arrest the crowd at the intersection of Washington Avenue and Tucker Boulevard.

For instance, Baude alleges, and the record suggests, that the subordinate Officers relayed information about the crowd to Lieutenant Colonel Leyshock and Lieutenant Sachs, which creates a permissible inference that the subordinates were actively involved in the development of the arrest orders rather than merely following orders. Also, Baude alleges Officer Bockskopf personally arrested him without probable cause. He makes specific factual allegations regarding his own conduct and the conduct of the crowd both before and during the arrest that, if accepted as true, undermine Officer Bockskopf's allegedly reasonable reliance on

-12-

his superiors' allegedly lawful orders to effect the arrest. These are, however, fact issues that we are without jurisdiction to decide. See Hoyland v. McMenomy, 869 F.3d 644, 651 (8th Cir. 2017) (stating our jurisdiction extends only to questions of law on an interlocutory appeal).

At this stage of the proceedings, the pleadings and the attached evidence do not entitle the subordinate Officers to the protection of qualified immunity based on their arguments that they purportedly and reasonably followed orders from their supervisors in effecting the arrests. Ehlers, 846 F.3d at 1010. As such, Baude has alleged a plausible claim for relief against the subordinate Officers.

### III.   CONCLUSION

Because Baude's unreasonable seizure and excessive force claims are factually supported and fall within the liberal pleading standard of plausibility, the district court did not err in denying the Officers' motion based on qualified immunity. See Twombly, 550 U.S. at 557 (finding a complaint will survive the pleading stage if it merely sets forth "allegations plausibly suggesting" a legal violation).

We affirm the district court's judgment.

_____